## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JUWAN OWENS,

    Plaintiff,

    v.

                       Civil Action No.:  JRR-22-1739

WARDEN, and
OFC. SANUSI,

    Defendants.

### MEMORANDUM OPINION

Pending in this civil rights case is Defendant Warden Robert Dean and Lt. Jamiu Sanusi's Motion to Dismiss or, in the Alternative, for Summary Judgment.[1]  ECF 20.  Self-represented Plaintiff Juwan Owens, currently incarcerated at Western Correctional Institution ("WCI") and previously incarcerated at Jessup Correctional Institution ("JCI"), was advised of his right to file a response in opposition to the Motion; he has filed nothing further in this case.  ECF 21.  Also pending is Defendants' Motion for David A. Fraser to Withdraw as Attorney, which shall be granted.  ECF 23.  No hearing is necessary to address the pending motions.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a motion for summary judgment, shall be granted.

### BACKGROUND

#### A.    Complaint Allegations

Plaintiff filed his initial Complaint in the form of correspondence.  ECF 1.  Because the Complaint did not provide sufficient information regarding his claims or indicate whom Plaintiff intended to name as Defendants, Plaintiff was directed to supplement the Complaint.  ECF 2.

---

[1] The Clerk shall be directed to amend the docket to reflect the correct names of Defendants.

Plaintiff filed his Supplemental Complaint, naming Warden Robert Dean and Lt. Jamiu Sanusi as Defendants and reiterating the same and similar allegations as those set forth in the initial Complaint. ECF 3.

Plaintiff alleges that on June 25, 2022, while housed at JCI, he received permission from the tier officer to go to another tier to get his food. ECF No. 3 at 5. He proceeded to the tier and gave that tier officer his identification. *Id*. at 2. Plaintiff next went to get his medication, but was unable to do so, because he did not have his ID. *Id*. When he went back to the tier to get his ID, the tier officer told him to ask for it from the building sergeant in the "bubble."[2] *Id*. Plaintiff went to the bubble and put his face near the slot in order to ask for his ID. *Id*. In response, an unnamed corrections officer struck him in the face with a can of mace. *Id*. This action caused Plaintiff to become "irate and angry" because he had not threatened anyone or been disrespectful. *Id*. Plaintiff does not allege that the officer deployed the mace, and he states that he is unsure whether the action was deliberate or an accident. ECF 1 at 2. Plaintiff states that he was yelling as other officers arrived to calm him down. ECF 1 at 2. He alleges further that he asked for a form to file an Administrative Remedy Procedure ("ARP") complaint, but the officers refused to give him one. *Id*. He also alleges he asked for medical care, which request was denied. *Id*. Plaintiff complains that heh continued to ask various officers for an ARP form and to go to medical and was repeatedly refused these requests. *Id*. at 3.

Plaintiff alleges that at about 7:50 p.m. the same day, Officer Sanusi "gave [him] an ultimatum to either go in the rec hall and leave the incident alone or go on lockup for assault on an officer." ECF 3 at 3. Plaintiff went to the rec hall; officers stopped him in the foyer and informed him he was being placed on disciplinary segregation, which Plaintiff contends was in

---

[2] Defendants explain that "the bubble" refers to the secure control room in the housing unit. ECF 20-1 at 3, n.2.

retaliation for his attempting to file an ARP earlier that day. *Id*. Plaintiff then asked to talk to a lieutenant or captain to explain the situation. *Id*. Lt. Sanusi "came out [of] the bubble and started walking to me aggressively at which point I started to back up towards the wall and he attempted to swing on me which escalated the situation which led to the other officers using force and while on the floor Officer Sanusi swung on me again and proceeded to choke me." *Id*. When backup officers arrived, Plaintiff alleges he was escorted to lockup. *Id*. Plaintiff alleges that he "received a busted lip injury[,] bruises to [his] thigh and side and a cut on [his] hand." *Id*. at 4.

On June 27, 2022, Plaintiff was transferred to WCI and placed in segregation where he complains that his cell had only the bare necessities, and he had no access to his legal work, mail, clothes, or other property. ECF 1 at 3. He also alleges that he was not provided a copy of the disciplinary infraction, and, therefore, was unable to prepare a defense in violation of his due process rights. ECF 1 at 3.

### B.    Defendants' Response – Assertions of Undisputed Material Facts

The following facts are undisputed and/or Plaintiff fails to generate a dispute of fact as to the following:

Plaintiff filed an ARP regarding the events that occurred on June 25, 2022, and June 27, 2022 as described in his Complaint, and it was dismissed for procedural reasons because "the subject matter of [the] request is under investigation by the Department's Intelligence and Investigative Division . . . and no further action will be taken under the Administrative Remedy Procedures at this level." ECF 20-3 (copy of Plaintiff's ARP).[3]

Plaintiff was issued an infraction ticket for his altercation with JCI officers and admitted to the charges. ECF 20-1 at 6. He was issued the ticket on June 26, 2022, but  refused to sign for its

---

[3] Defendants include additional information and documents related to the grievance procedure, however, they are not necessary to disposition of the pending motion. ECF 20-1 at 5, 20-2, 20-4, and 20-5.

receipt.  *Id*.; *see also* ECF 20-6 (copy of Notice of Inmate Rule Violation).  The receipt provided an opportunity to request a representative and list any witnesses or evidence, but Plaintiff declined to complete the form.  *Id*.  On July 8, 2022, Plaintiff was scheduled for a hearing on his infraction charges.  ECF 20-1 at 7; *see also* ECF 20-7 (copy of Inmate Hearing Record).   However, he waived his appearance and plead guilty to all charges.  *Id*.; ECF 20-8 (copy of Inmate Waiver of Appearance with a Plea Agreement).

Warden Dean and Lt. Sanusi are both employed at JCI.  ECF 20-1 at 7; ECF 20-9 at ¶¶ 1 and 4 (Declaration of Warden Dean); ECF 20-10 at ¶¶ 1 and 4 (Declaration of Lt. Jamiu Sanusi).  Neither Defendant is employed at WCI, and they do not have any authority over the conditions of confinement at WCI.  *Id*.  Additionally, neither Warden Dean nor Lieutenant Sanusi is a medical professional or responsible for Plaintiff's medical care, nor did they interfere with or delay his medical treatment.  ECF 20-1 at 7; ECF 20-9 at ¶ 5-8; ECF 20-10 at ¶ 5-8.

## STANDARD OF REVIEW

### A.    Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a

4

reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely

to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

### B.    Discovery

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (*per curiam*); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).   However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty.*

*Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of the non-moving party's Rule 56(d) affidavit, the Court shall not issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

## C.    Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has clarified that this does not mean that any factual

dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The Court "view[s] the evidence in the light most favorable to . . . the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Plaintiff failed to exhaust his administrative remedies. ECF 20-1 at 5. If Plaintiff's claims have not been properly presented through the administrative remedy procedure, they must be dismissed (without prejudice) pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'…normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he…PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative

remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. MD. CODE REGS. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an administrative remedy procedure request ("ARP") with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *Id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *Id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). MD. CODE ANN., CORR. SERVS. §§ 10-206, 10-210; MD. CODE REGS. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. MD. CODE ANN., CORR. SERVS. § 10-210(a).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 578 U.S. 632, 635 (2016). Specifically, the Court rejected a "special circumstances" exception to the exhaustion requirement but reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. "[A]n administrative remedy is not considered to have

been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d at 725.

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *Chase v. Peay*, 286 F.Supp.2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004). As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Defendants submitted a copy of Plaintiff's ARP dated July 9, 2022, and stamped received by the Warden on July 11, 2022. ECF 20-3. The ARP was dismissed on July 11, 2022, for

12

procedural reasons because "the subject matter of [the] request is under investigation by the Department's Intelligence and Investigative Division under case number 22-35-1062 and no further action will be taken under the Administrative Remedy Procedures at this level." The response noted Plaintiff's right to appeal the decision to the Commissioner of Correction. *Id.* Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not appeal the dismissal of the ARP to the Commissioner of Corrections and instead filed an appeal with the Incarcerated Individual Grievance Office ("IIGO"). ECF 20-1 at 5. However, "[u]nder Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division [("IID")] investigation. If they do, that grievance will automatically be dismissed as procedurally deficient." *Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (citing MD. CODE REGS. § 12.02.28.11(B)).

The *Younger* Court further observed that the PLRA does not require prisoner litigants to engage in futile efforts to somehow convince correctional officials and the IGO to ignore applicable law and consider their administrative remedy requests on the merits of the claim asserted. *Id.* Therefore, the dismissal of Plaintiff's ARP because the matter was referred to IID rendered any further appeals futile and the process effectively unavailable. As such, Defendants have not met their burden to show Plaintiff failed to exhaust his administrative remedies, and their Motion will not be granted on that basis.

### B.    Personal Participation and Supervisory Liability

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Further, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is

premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff does not allege that Warden Dean personally participated or even was aware of any of the events described in the Complaint.  ECF 1, 3.  Likewise, he has does not assert that Warden Dean is liable for any unconstitutional conduct committed by his subordinates.  *Id.*  In fact, Plaintiff does not mention Warden Dean outside the caption of the Supplement to the Complaint.  ECF 3.  As such, Warden Dean's Motion, construed as a Motion to Dismiss, shall be granted.

Likewise, Plaintiff does not allege that Lt. Sanusi personally participated in failing to provide medical care or had some responsibility for, or involvement in, poor prison conditions at WCI.  ECF 1, 3.  Plaintiff alleges generally that he was not provided medical care following the alleged use of excessive force, but he does not attribute the failure to any individual.  Likewise, he does not allege that any individual person is responsible for the poor conditions of confinement he experienced after being transferred to WCI.  Therefore, Plaintiff fails to state a claim against either named Defendant as to his claims of inadequate medical care and poor prison conditions.  As such,

Warden Dean and Lt. Sanusi's Motion, construed as a motion to dismiss, is granted as to these claims.

### C.    Due Process

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *Wolff*, 418 U.S. at 564-66, 592. In this setting, there is no constitutional right to confront and cross-examine witnesses, or to retain or be appointed counsel. *Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *Baxter*, 425 U.S. at 322, n.5.

Plaintiff claims he was not provided a copy of the disciplinary infraction and, therefore, he was unable to defend himself. ECF 1 at 4. The undisputed facts, however, are that Plaintiff refused to sign and accept the receipt for his disciplinary infraction; declined the opportunity to request a representative; declined the chance to present witnesses and evidence; waived his appearance at the hearing; and plead guilty (or admitted) to the infractions. ECF 20-6, 20-7, 20-8. Even seen in

the light most favorable to Plaintiff, no dispute of fact exists as to Plaintiff's claim of due process

violation. He fails to generate any triable issue on this matter. Defendants are entitled to summary

judgment in their favor as to this claim.

### E.    Excessive Force

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel

and unusual punishments." U.S. CONST. AMEND. VIII. This prohibition "protects inmates from

inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761

(4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary

and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v.*

*Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must

establish both that the prison official subjectively "acted with a sufficiently culpable state of mind"

and that the injury or deprivation inflicted was objectively serious enough to constitute a violation.

*Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used

force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good

faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting

*Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider

"(1) the need for the application of force; (2) the relationship between the need and the amount of

force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made

to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)

(quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force

claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559

U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause

of action." *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9).  Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury.  *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *Hudson*, 503 U.S. at 9.  The extent to which injuries are modest is accounted for in the award of damages.  *See Wilkins*, 559 U.S. at 40.

Here, Plaintiff alleges that Lt. Sanusi "came out the bubble and started walking to me aggressively at which point I started to back up towards the wall and he attempted to swing on me which escalated the situation which led to the other officers using force and while on the floor Officer Sanusi swung on me again and proceeded to choke me."[4]  ECF 3 at 3.  Liberally construed, Plaintiff sufficiently alleges that Lt. Sanusi used excessive force against him by swinging at him and choking him.  Lt. Sanusi does not address this claim in the Motion (or in his affidavit in support of same).  ECF 20-1 and 20-10.  To the extent Lt. Sanusi moves for dismissal or summary judgment as to this claim, the Motion is denied.

## CONCLUSION

For the reasons stated, Warden Dean's Motion, construed as a motion to dismiss, is granted. Lt. Sanusi's Motion, construed as a motion for summary judgment, is granted in part and denied in part.  Lt. Sanusi's Motion is granted as to the medical, conditions, and due process claims against him.  The Motion is denied as to the excessive force.  Defendants' Motion to Withdraw as Attorney will be granted.

---

[4] Given that Plaintiff does not name the individual who allegedly hit him from inside the bubble when he was trying to retrieve his ID, and that he concedes that he does not know whether it was an accident or purposeful, even construing the Complaint broadly, the Court does not construe his Complaint to include a claim of excessive force as to that incident.  *See* ECF 1 at 2.

February 27, 2025

/S/

_____

Julie R. Rubin
United States District Judge